**Tawanna FRAISER, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**STANLEY BLACK & DECKER, INC., Defendant.**

**Civil Action No. 12–1182–WGY.**

United States District Court, D. Connecticut.

Signed June 9, 2015.

Filed June 15, 2015.

Andrei V. Rado, Jennifer S. Czeisler, Johnathan P. Seredynski, Sanford P. Dumain, Milberg LLP, New York, NY, for Plaintiff.

David L. Belt, David A. Slossberg, Hurwitz Sagarin Slossberg & Knuff LLC, Milford, CT, Diana Gjonaj, Milberg LLP, Detroit, MI, David L. Young, William E. Manske, Barnes & Thornburg, Minneapolis, MN, Jeffrey L. Ment, Morris R. Borea, Rome McGuigan, P.C., Hartford, CT, Mark P. Miller, Barnes & Thornburg LLP, Chicago, IL, for Defendant.

## REPORT

YOUNG, District Judge.[1]

## I. INTRODUCTION

This matter is back before this Court upon remand from the United States Court of Appeals for the Second Circuit "for clarification and for a proper explanation" of this Court's *ore tenus* order striking the Plaintiff's class action allegations and dismissing the complaint for lack of subject matter jurisdiction. Mandate U.S.Ct. Appeals, Jan. 15, 2015 ("2d Cir. Mandate") 4, ECF No. 68.

## II. BACKGROUND AND PRIOR PROCEEDINGS

On August 13, 2012, Tawanna Fraiser ("Fraiser") filed a complaint against Stanley Black & Decker, Inc. ("Black & Decker") alleging that Black & Decker markets and sells numerous models of electronic pest control devices ("Pest Control Devices") which do not perform as advertised because they do not "repel pests." Class Action Compl. ("Compl.") ¶¶ 3–5, ECF No. 1. Fraiser alleges that she bought one of these Pest Control Devices and was damaged because she did not get a product that repelled pests, which was what she had paid for. *Id.* ¶ 6.

Fraiser claims that Black & Decker's actions were a breach of express warranties under Connecticut common law and that its marketing and sales were designed to mislead and deceive consumers, constituting a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a et seq., the Connecti-

---

1. Of the District of Massachusetts, sitting by designation.

cut Unfair Sale Practices Act ("CUSPA"), Conn. Gen.Stat. § 42–115e et seq., and the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 et seq. Compl. II 28–41, 50–58. Fraiser asserts these claims individually and as a class action on behalf of herself and all others similarly situated. *Id.* ¶ 1.

In her complaint, Fraiser points to two ways in which this Court could exercise subject matter jurisdiction over the case. First, she claims that the court has diversity jurisdiction over the class state law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d), which grants federal jurisdiction over class actions with more than 100 members (one of whom is diverse from the defendant) and more than $5,000,000 in claimed damages. *Id.* ¶ 12. Second, she claims that the court has federal question jurisdiction because she raises a claim under the Magnuson–Moss Act. *Id.* She does not allege that the Court has subject matter jurisdiction over her individual claims raised under state law. *See id.*

On November 1, 2012, Black & Decker moved to strike Fraiser's class action allegations and to dismiss the complaint. Mot. Dismiss & Strike Pl. Tawanna Fraiser's Class Allegations, ECF No. 30. Black & Decker simultaneously filed a memorandum of law in support of its motion. Mem. Law Supp. Mot. Dismiss & Strike Pl. Tawanna Fraiser's Class Allegations ("Black & Decker's Mem."), ECF No. 30–1. On December 14, 2012, Fraiser filed a brief in opposition to Black & Decker's motion. Pl.'s Mem. Law. Opp'n Def.'s Mot. Dismiss & Strike Class Allegations ("Fraiser's Opp'n"), ECF No. 38. On January 10, 2013, this case was reassigned to me as a visiting judge from the District of Massachusetts. Order Transfer, ECF No. 41. Black & Decker filed a brief replying to Fraiser's opposition on January 11, 2013. Reply Mem. Law Supp. Mot. Dismiss & Strike Pl. Tawanna Fraiser's Class Allegations ("Black & Decker's Reply"), ECF No. 42.

On October 4, 2013, this Court held a motion hearing via video conference and entered an order granting Black & Decker's motion. Min. Entry, ECF No. 57. This Court also granted Fraiser ten days to file any additional reply brief citing cases and determined that if the ruling were to remain the same after this Court reviewed this briefing, an order of dismissal would be entered. *Id.*

On October 15, 2013, Fraiser filed a motion for reconsideration of this order, along with a supporting memorandum. Pl.'s Mot. Recons. Dismissal, ECF No. 58; Mem. Law Supp. Mot. Recons. Oct. 4, 2013 Oral Ruling Dismissing This Action ("Fraiser's Mem. Recons."), ECF No. 59. Black & Decker filed an opposition to Fraiser' motion for reconsideration on October 25, 2013. Def.'s Opp'n Pl.'s Mot. Recons. Oct. 4, 2013 Oral Ruling Dismissing This Action ("Black & Decker's Opp'n Recons."), ECF No. 60. On November 15, 2013, this Court denied Fraiser's motion for reconsideration. Order Den. Pl.'s Mot. Recons., ECF No. 62. On January 16, 2014, this Court entered an Order of Dismissal and Judgment in favor of Black & Decker. Order Dismissal, ECF No. 63; J., ECF No. 64.

On January 27, 2014, Fraiser appealed this Court's judgment to the Second Circuit. Notice Appeal, ECF No. 65. On January 15, 2015, the Second Circuit vacated this Court's judgment and remanded the case for further proceedings. 2d Cir. Mandate 2.

## III. FACTS OF RECORD

Fraiser is a consumer residing in Philadelphia, Pennsylvania. Compl. ¶ 11. In December 2010, Fraiser purchased a package of four Black & Decker Model

EW411–4p ultrasonic pest repellers for $28.00 at a Pennsylvania Home Depot store. *Id.* Fraiser had read the label on the package, which stated that the product "[d]rive[s] out Mice, Cockroaches, Spiders," and other pests. *Id.* ¶¶ 11, 14. Fraiser specifically sought to repel mice from her home. She plugged each device in different rooms in her house and now alleges that, after approximately one year of use, the four devices "had no effect on the number of mice in her home." *Id.* ¶ 11. Fraiser kept the devices plugged in until the winter of 2011 and eventually hired a professional exterminator to deal with her mouse problem. *Id.* Fraiser claims that she was damaged, in an amount to be determined at trial, because she did not get a product that repelled pests, which was what she had paid for. *Id.* ¶ 6.

Black & Decker is a Connecticut corporation with its corporate offices located in New Britain, Connecticut. *Id.* ¶ 12. Various models of Pest Control Devices with the trade name "Black & Decker"[2] are marketed and sold online and at numerous retail stores nationwide; the models include (but are not limited to) the EW411–4p, EX310, EX900–A, EP321, EP1100–A, EX410, and EX420. *Id.* ¶ 13. The packaging for each of these models contains some variation on the statement that the device "generates powerful ultrasonic signals that repel pests from your home or office." *See id.* ¶¶ 14(a)-(f). Fraiser alleges that "no credible, scientific evidence shows that electronic pest repellents work in ridding homes of pests" and cites various studies that purportedly support this claim. *Id.* ¶¶ 15(a)-(c). In particular, Fraiser points to a May 3, 2001, Federal Trade Commission press release stating that the agency "had sent warning letters to the more than 60 manufacturers of ultrasonic pest control devices, concluding that any reaction by rodents to ultrasound would be temporary at best." *Id.* ¶ 17. According to the press release, "[t]he warning letters urged manufacturers and retailers of ultrasonic pest-control devices to examine their advertising and ensure they have competent and reliable scientific evidence to support claims that a product eliminates or repels certain pests." *Id.*

Fraiser alleges that, consistent with her own personal experience with the EW411–4p and the available scientific evidence, none of the other models listed above repel pests. *See id.* ¶¶ 13, 15, 18. Fraiser also claims that "[u]pon information and belief, the deceptive marketing of Defendant's Pest Control Devices was conceived at, and emanated from, Defendant's corporate headquarters located in Connecticut." *Id.* ¶ 12. Accordingly, Fraiser asserts that Black & Decker's actions were a breach of express warranties under Connecticut common law. *Id.* ¶¶ 42–49.

Fraiser further alleges that Black & Decker's marketing and sales were designed to mislead and deceive consumers and therefore constitute a violation of CUTPA, *id.* ¶¶ 28–37, CUSPA, *id.* ¶¶ 38–41, and the Magnuson–Moss Warranty Act, *id.* ¶¶ 50–58. Fraiser asserts the above claims individually and as a class action on behalf of herself and all others similarly situated, *id.* ¶¶ 1–2, with the class consisting of:

> All persons in the United States who have purchased Black & Decker Pest Control Devices, Including but not limited to models EW411–4p; Ex–310; EX–

---

**2.** Black & Decker notes that it did not design, manufacture, or sell the product Fraiser allegedly purchased and that it merely licensed its trade name to Applica Consumer Products, Inc. Black & Decker's Mem. 2 n. 1. Should the Second Circuit overturn this ruling, Black & Decker has reserved the right to seek dismissal on these grounds. *Id.*

900A; EP321; EP–1100A; EX 410; EX 420., from August 13, 2009 to the present.

*Id.* ¶ 19.

## IV. ANALYSIS

### A. Standards of Review

#### 1. Motions to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6):
[T]he court takes the allegations of the Complaint as true and construes them in a manner favorable to the plaintiff. *See, e.g., Hoover v. Ronwin,* 466 U.S. 558, 587, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984); *Phelps v. Kapnolas,* 308 F.3d 180, 184 (2d Cir.2002). The court must draw all reasonable inferences in the plaintiff's favor. *See, e.g., Yung v. Lee,* 432 F.3d 142, 146 (2d Cir.2005). A motion to dismiss for failure to state a claim tests only the adequacy of the Complaint. *See United States v. City of New York,* 359 F.3d 83, 87 (2d Cir.2004).

*Eslin v. Hous. Auth. of the Town of Mansfield,* No. 3:11–CV–134 (JCH), 2012 WL 3090976, at *2 (D.Conn. July 12, 2012) (Hall, J.). To survive a motion to dismiss, a complaint must contain factual allegations that transcend "labels and conclusions" and that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

#### 2. Motions to Strike Under Rule 12(f)

Courts in this Circuit are reluctant to strike material from a pleading. " 'Motions to strike are generally looked upon with disfavor' [and] '[a] motion to strike class allegations … is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of … litigation, solely on the basis of what is alleged in the complaint, and

before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.' " *Chenensky v. N.Y. Life Ins. Co.,* No. 07–cv–11504 (WHP), 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011) (ellipses in original) (quoting *Ironforge.com v. Paychex, Inc.,* 747 F.Supp.2d 384, 404 (W.D.N.Y.2010)) (internal citations omitted); *see also Schaefer v. Gen. Elec. Co.,* No. 3:07–cv–0858 (PCD), 2008 WL 649189, at *6 (D.Conn. Jan. 22, 2008) (Dorsey, J.) (denying motions to strike class claims as premature); *Calibuso v. Bank of Am. Corp.,* 893 F.Supp.2d 374, 386 (E.D.N.Y.2012) (same).

### B. Standing to Pursue CUTPA Claims

Blacker & Decker asserts that Fraiser has no individual standing to recover under CUTPA "because she does not live in Connecticut, she did not purchase the product in Connecticut, and she did not suffer any alleged injury in Connecticut." Black & Decker's Mem. 22. Blacker & Decker argues that, consequently, Fraiser cannot bring a class action under CUTPA. *Id.* at 7–8.

Individual standing is a prerequisite for all actions, including class actions. *See O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other members of the class."); *Amador v. Andrews,* 655 F.3d 89, 99 (2d Cir.2011) ("[A] class action cannot be sustained without a named plaintiff who has standing."). Moreover, the "named class plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, uniden-

tified members of the class to which they belong and which they purport to represent.'" *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC,* 433 F.3d 181, 199 (2d Cir.2005) (quoting *Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). An analysis of the standing question therefore precedes any determination under Federal Rule of Civil Procedure 23, which governs when a class may be certified. *See In re Salomon Smith Barney Mut. Fund Fees Litig.,* 441 F.Supp.2d 579, 607 (S.D.N.Y.2006); *In re AIG Advisor Group Sec. Litig.,* No. 06 CV 1625(JG), 2007 WL 1213395, at *5 (E.D.N.Y. Apr. 25, 2007) ("Courts in this circuit and elsewhere have rejected similar attempts to delay consideration of Article III standing until the class certification stage . . . .").

■ Statutory standing to bring a CUTPA claim is set forth in Connecticut General Statutes Section 42–110g(a) ("Section 42–110g(a)"), which states: "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42–110b, may bring an action . . . to recover actual damages." Conn. Gen.Stat. § 42–110g(a). This provision says nothing about the necessity of a CUTPA plaintiff being a resident of Connecticut, and a 2004 case makes this clear. In *Metropolitan Enterprise Corp. v. United Technologies International, Corp.,* the court held that the plaintiff's "failure to plead residency or injury in Connecticut does not warrant dismissal under Fed.R.Civ.P. 12(b)(6)." No. 3:03CV1685 (JBA), 2004 WL 1497545, at *4 (D.Conn. June ·28, 2004) (Arterton, J.). As explained in that case:

> That statute makes no distinction between residents and non-residents of Connecticut but permits "any person"

suffering ascertainable loss resulting from a CUTPA violation to maintain an action in the judicial district in which the defendant resides or has his principal place of business or is doing business. Conn. Gen.Stat. § 42–110b(a) . in turn does not require injury inside Connecticut borders but, via Conn. Gen.Stat. § 42–110a(4) . . . focuses on the locus of the offending conduct, that is, whether it occurs "in" Connecticut. Thus, the statutory scheme permits out of state residents to bring a CUTPA action against a defendant located in Connecticut notwithstanding the locus of injury.

*Id.* Therefore, Fraiser's lack of residency in Connecticut is not a bar to her establishing standing.

In addition, there is no language in Section 42–110g(a) restricting standing to persons who purchased a product in Connecticut or were injured in Connecticut. Although the statutory definition of "trade" and "commerce" set forth in Connecticut General Statutes Section 42–110a(4) limits the scope of CUTPA to conduct "in this state," both state and federal courts have interpreted this language not to require that the violation actually occur in Connecticut "if the violation is tied to a form of trade or commerce intimately associated with Connecticut, or if, where Connecticut choice of law principles are applicable, those principles dictate application of Connecticut law." *Cohen v. Roll–A–Cover, LLC,* 131 Conn.App. 443, 27 A.3d 1, 15 (2011); *see also Metro. Enter. Corp.,* 2004 WL 1497545, at *7 (holding that "the phrase 'in this State'" applied to "the conduct alleged here: a Connecticut seller, in connection with the sale or the offering for sale of its jet engines, hatching and implementing a plan inside the borders of Connecticut the deceptive or unfair effect of which is felt outside those borders").

Courts in this district have recognized Connecticut's interest in regulating the conduct of businesses domiciled within the state. *See Country Club Assocs. v. Shaw's Supermarkets, Inc.*, 643 F.Supp.2d 243, 253 (D.Conn.2009) (Hall, J.) ("Connecticut has an interest in regulating unfair trade practices undertaken from the state by a company domiciled in the state, even where the effects of those practices may have their primary impact out of state or a choice of law analysis of a given transaction favors the applications of out-of-state law."). In the same fashion, there is a sufficient association with the State where defendants are incorporated within Connecticut. *See, e.g., Country Club Assoc. v. Shaw's Supermarkets, Inc.*, No. 06–CV0491 (JCH), 2009 WL 1537952, at *29 (D.Conn. May 29, 2009) (Hall, J.) ("Courts have found that behavior that originates ... in Connecticut but has its primary effects out of state may qualify" as "a form of trade or commerce intimately associated with Connecticut"); *Metro. Enter. Corp.*, 2004 WL 1497545, at *6 (holding that the plaintiff, who was not a resident of Connecticut and was not alleged to have suffered any injury in Connecticut, had adequately stated a CUTPA claim because it had alleged a sufficient nexus with Connecticut).

■ Fraiser's complaint alleges that Black & Decker conceived the Pest Control Devices' deceptive marketing at its corporate headquarters in Connecticut. Compl. ¶ 12. Fraiser further asserts that Black & Decker purposefully avails itself of the Connecticut consumer market. *Id.* ¶ 9. These aspects of the Complaint appear to establish a sufficient nexus between Black £ Decker's alleged conduct and the state of Connecticut, thereby satisfying the requirement for individual standing under CUTPA.

■ Connecticut General Statutes Section 42–110g(b) ("Section 42–110g(b)"), however, limits Fraiser's standing to raise a claim on behalf of a class, stating that: "[p]ersons entitled to bring an action under subsection(a) of this section may, pursuant to rules established by the judges of the Superior Court, bring a class action on behalf of themselves and other persons similarly situated who are residents of this state or injured in this state to recover damages." Conn. Gen.Stat. § 42–110g(b). Therefore, although Fraiser has individual standing to bring a CUTPA claim, she "may not bring a class action because [she] could not be representative of class members with the statutorily required in-state residency or injury characteristics." *Metro. Enter. Corp.*, 2004 WL 1497545, at *4.

■ Fraiser claims that Section 42–110g(b) is unenforceable by virtue of *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010); she claims that that case's holding means that the governing law here is Federal Rule of Civil Procedure 23, which she says permits a nationwide class to be asserted under CUTPA. Fraiser's Mem. Recons. 5. Black £ Decker, on the other hand, argues that *Shady Grove* does not apply where a state law's limitation on maintenance of a class action is "so intertwined with a state right or the remedy that it functions to define the scope of the state-created right." Black & Decker' Opp'n Recons. 5 (quoting *Shady Grove*, 559 U.S. at 423, 130 S.Ct. 1431 (Stevens, J., concurring)) (internal quotation marks omitted). As Black & Decker correctly asserts, the "intertwined" test articulated by Justice Stevens is controlling, meaning that Rule 23 only supersedes procedural state law. *See, e.g., Leonard v. Abbott Labs., Inc.*, No. 10–CV–4676 (ADS)(WDW), 2012 WL 764199, at *12 (E.D.N.Y. March 5, 2012) (collecting

cases). Black & Decker claims that the statutory residence requirement in CUTPA is deeply "intertwined" with the statutory remedy CUTPA creates and therefore is enforceable and not preempted by *Shady Grove*. Black & Decker's Opp'n Recons. 6. As another session of this Court has recently pointed out, "[w]hile the Second Circuit has yet to provide authority as to whether the [class action] restrictions in CUTPA are substantive or procedural, other courts have determined similar statutes to be substantive." *In re Trilegiant Corp., Inc.*, 11 F.Supp.3d 82, 118 (D.Conn. 2014) (Bryant, J.). Analyzing the Section 42–110g(b) class restriction, the *In re Trilegiant* court ruled that it "reflects a substantive policy judgment by the Connecticut legislature" and that "[b]ecause the restriction is substantive rather than procedural, Rule 23 cannot supersede it." *Id.* at 119 (therefore granting defendant's motion to strike CUTPA nationwide class action). The Court sees no reason to depart from the well-reasoned analysis of its sister session. Accordingly, the CUTPA class action restriction is not preempted by *Shady Grove*, and Fraiser may not bring a nationwide class action under CUTPA.

As Fraiser is unable to assert a CUTPA claim on behalf of the putative class, this Court strikes the CUTPA class allegations from Fraiser' complaint. As a result, there is no need for the Court to conduct a Rule 23 analysis. This, of course, leaves Fraiser's individual CUTPA claim, but because the disposition of this matter is inextricably linked with the outcome of the Court's analysis of her other claims, the Court will address Black & Decker's motion to dismiss the individual claim below.

## C. Breach of Express Warranty Claim

■ Black & Decker argues that Fraiser's claim for breach of express warranty does not satisfy the privity requirement. Black & Decker's Opp'n Recons. 3–4. Fraiser, on the other hand, alleges that because the claim sounds in tort (by way of the defendant's misrepresentation), no privity is required. Fraiser's Mem. Recons. 2.

■ Under Connecticut common law, privity is required to establish a claim for breach of express warranty. *See Hartford Cas. Ins. Co. v. PureTech Waters of Am., LLC*, No. CV116021419S, 2012 WL 1435221, at *3 (Conn.Super.Ct. Mar. 30, 2012) (Peck, J.) ("[I]n order to sustain an action for breach of express or implied warranty there has to be evidence of a contract between the parties, for without a contract there [can] be no warranty." (second alteration in original) (quoting *Hamon v. Digliani*, 148 Conn. 710, 712, 174 A.2d 294 (1961))). As Black & Decker correctly points out, the privity requirement is relaxed where injured parties seek warranty recovery for personal injury damages—but parties seeking to state a claim for breach of express warranty for economic losses, like Fraiser here, still have to establish privity. *See* Black & Decker's Opp'n Recons. 4 (citing *Kahn v. Volkswagen of Am., Inc.*, No. FSTCV075004090S, 2008 WL 590469 (Conn.Super.Ct. Feb. 13, 2008); *Rosenthal v. Ford Motor Co.*, 462 F.Supp.2d 296 (D.C.Conn.2006) (Hall, J.)). This approach—drawing the line requiring privity between personal injury claims on the one hand and economic loss claims on the other—makes more sense than Fraiser's argument that she can avoid the privity requirement because Black and Decker's misrepresentation makes her claim sound in tort. After all, virtually all breach of warranty claims could be construed as involving some degree of misrepresentation, as by definition they involve a defendant's making a promise they did not keep. Fraiser's suggested reading creates

an exception that swallows the rule, then, and the Court thus rejects it.

Fraiser's Complaint alleges that she purchased the model EW411–4p Pest Control Device from a Home Depot in Pennsylvania. Compl. ¶ 11. This would establish privity between Fraiser and Home Depot but not between Fraiser and Black & Decker. In its reply, Black & Decker rightly points out that Fraiser's brief in opposition to Black & Decker's motion contains no counterargument to the above analysis. Black & Decker's Reply 9. Therefore, Fraiser has failed to state a common law claim for breach of warranty—individually and on behalf of a class, both because she has failed to allege privity between the class and the defendant and because she would not be a member of any class that did have such privity—and thus this portion of the complaint was DISMISSED.

### D. Magnuson–Moss Warranty Act

 In her motion for reconsideration, Fraiser alleges that Count V of her complaint, bringing a federal warranty claim under the Magnuson–Moss Warranty Act, constitutes an independent federal cause of action despite the dismissal of her Connecticut common law claims. Fraiser's Mem. Recons. 1. In addition to an argument regarding waiver that the Court need not address (for reasons that become evident momentarily), Black & Decker argues that this represents a misreading of the Magnuson–Moss Act. Black & Decker's Opp'n Recons. 2–3. Specifically, Black & Decker correctly indicates that this statute does not create an independent federal cause of action for breach of warranty and is instead tied inextricably to underlying state causes of action. *See id.; see also Maloney v. Microsoft Corp.,* No. 09–2047, 2011 WL 5864064, at *6–7 (D.N.J. Nov. 21, 2011) ("Plaintiffs' ultimate right to recover on their MMWA claims still depends on state law.... [N]o case has ever held that a substantive violation of the MMWA provides for a separate right to recover apart from the underlying [state law] breach of warranty claims."); *Oscar v. BMW of N. Am., LLC,* 274 F.R.D. 498, 509 (S.D.N.Y. 2011) ("The MMWA does not create additional bases for recovery, but rather federalizes existing state law causes of action."). Fraiser's Magnuson–Moss Act action therefore relies on her claim for breach of express warranty under Connecticut common law and follows its fate. Because this Court found that Fraiser had not stated a state law claim, it necessarily follows that she does not state a Magnuson–Moss claim (either individually or as class representative) either.

### E. Standing to Pursue the CUSPA Claim

 Although Fraiser's CUSPA claim is not addressed in Black & Decker's briefing, *see* Black & Decker's Mem.; Black & Decker's Reply, the Court sees fit to offer sua sponte its analysis of Fraiser's standing to pursue this claim. *E.g., Cent. States Se. & Sw.,* 433 F.3d at 181 ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised sua sponte."). Specifically, the Court does not believe that Fraiser has adequately alleged an injury capable of supporting standing to pursue injunctive relief under CUSPA. *See Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir.1998) (noting that Article III standing requires (1) an injury, (2) that the defendant caused the injury, and (3) that a federal court decision may redress the injury).

 Fraiser's CUSPA claim, Compl. ¶¶ 38–41, seeks injunctive relief under Section 42–115e(a) of that statute, which states that "[a] person likely to be damaged by a deceptive trade practice of an-

other may be granted an injunction enjoining such practice under the principles of equity," Conn. Gen.Stat. § 42–115e(a). It is axiomatic that "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement [of Article III standing] but must show a likelihood that he or she will be injured in the future." *Deshawn E.*, 156 F.3d at 344.

In her count raising the CUSPA claim, Fraiser merely states that she and the class "are likely to be damaged by Black & Decker's trade practices," Compl. ¶ 40— simply mirroring the language of the statute itself without offering any factual allegations to back this claim up. The portions of the complaint laying out the facts do little to shed more light on how Fraiser is likely to be damaged in the future: the complaint describes how Fraiser previously purchased a Pest Control Device and how it and other models do not work as advertised, *see id.* ¶¶ 11–18, but at no point does she allege that she is going to suffer any additional economic loss beyond what she has already purportedly endured. Without such specific allegations, all the Court has suggesting that there is the possibility of future injury is the threadbare repeating of the language of the statute itself, which falls short of the pleading standard set by the Federal Rules of Civil Procedure. *See Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (stating that "a formulaic recitation of the elements of a cause of action will not do"). Without an adequate allegation of future injury, neither Fraiser nor the class has standing to seek an injunction; given that the only kind of relief sought in the CUSPA claim is injunctive, that claim was DISMISSED.

### F. Subject Matter Jurisdiction

The only claim to survive the Court's analysis above is Fraiser's individ-

ual CUTPA claim (to recap, the class CUTPA claim was stricken because the non-resident Fraiser cannot represent the class, the warranty claim failed because of a lack of privity for either Fraiser or the class, the Magnuson–Moss claim failed for lack of a state warranty claim, and the CUSPA claim failed for lack of adequately alleged future injury). This sole remaining claim, however, falls outside the Court's subject matter jurisdiction when it is viewed on its own: it arises under state law and thus cannot fall within the scope of federal question jurisdiction, and as an individual claim it falls beneath the amount-in-controversy requirement for diversity jurisdiction. Thus, the only way the Court could hear it would be through an exercise of supplemental jurisdiction, but there are no other claims remaining upon which the individual CUTPA claim can piggyback its way into federal court. Accordingly, the individual CUTPA claim—like the rest of the complaint—was DISMISSED.

## V. CONCLUSION

For the foregoing reasons, this Court therefore **GRANTED** Black & Decker's motion to dismiss from the bench on January 16, 2014. The Order of Dismissal and Judgment for Black & Decker shall be re-entered on the docket and a certified copy of this Report shall be submitted to the Second Circuit in satisfaction of its mandate.

**SO ORDERED.**